Good morning. Kara Hartzler on behalf of Mr. Reyes. There's two key points that I want to make sure that I conveyed to the court this morning. Number one, in illegal reentry trials like Mr. Reyes', where the government relies on deportation documents to prove the element of alienage, judges need to be instructing juries on the differing burdens in criminal and immigration proceedings. Because if they don't, juries have absolutely no way of knowing that a prior deportation without more is not sufficient to prove alienage. And then my second point is that if the government in this case thought that the A-file belonging to the other person was material enough to investigate, then it was material enough to include in discovery or at least put us on notice that it existed. So at a minimum, what we're asking for today on that point is that the court remand for an evidentiary hearing to allow the district court to look at the other A-file and then we can figure out whether in fact there was something in there that was material or helpful and we can determine prejudice. So we're not necessarily saying the court has to remand for a new trial altogether. There could be just a remand for an evidentiary hearing on that point. When did that A-file problem come to your attention? During the direct examination of the A-file custodian. Well, why wasn't that the time to ask for a hearing or whatever? I believe that we did say, Your Honor, we believe this is a Brady violation, a Rule 16 violation. At that point, those requests were denied, so I'm not sure that an evidentiary hearing would have flown at that point. Well, why does it fly now? Because, Your Honor, we're saying that it was error. We're saying that there was a discovery error here. Bottom line is what happened is the government thought that this was material enough that they ordered this other file. They got it out of their huge storage area. They brought it in. They had someone look at it. Now, if that's enough to do, in other words, if it's material enough to investigate, it's material enough to discover, and it's material enough to at least put us on notice. And so that's our main point with regard to that. The other point I want to talk about is the whole issue of the difference between immigration and criminal proceedings and the differing burdens. And the reason this is important is because the average layperson is going to have absolutely no idea that there's a difference in burden between criminal and immigration proceedings, that criminal is beyond a reasonable doubt and civil is clear and convincing evidence. So this court's case law clearly says that deportation documents by themselves are not enough to show that the person is an alien. But if you don't maybe I'm thinking about another case because I haven't heard you mention that Agent Lava testified that Mr. Reyes had admitted prior removals. Isn't that important in this case? Well, I mean, I think that is not evidence upon which a jury could find that. Yes, he had been removed earlier, regardless what the documents say. It is possible. Not as possible. It is sufficient evidence under Jackson to allow a finding by a jury, right? So where's the error? Two points. I think, first of all, the government never relied on that in their closing argument. All the government relied on were the deportation documents. So that's what the jury heard. Second, we don't know what the jury relied on. It is entirely possible. The jury relies on evidence. That's right. We review the jury's verdict as to whether there is evidence in the record. This is evidence of Mr. Reyes' prior removals. His admissions are evidence. That's right. Your Honor. What's wrong with that? What's wrong with it is that when we're looking at whether a jury instruction adequately covers a point of law, we review that to know. The jury instruction was you must find that he was prior removed. No. The jury instruction was you have to find alienage beyond a reasonable doubt. Well, that's the burden of the measure of proof. But the issue which must be found, the material issue, is that he would have been removed before he came back in. Well, actually, I think that's a slightly different issue. There is the element that he was previously removed, but the element I'm talking about is alienage. That's a totally different element. And what instruction was given on that? There was no instruction. The only instruction was you need to find that he's an alien beyond a reasonable doubt. Well, what's wrong with that? Because a jury has no way of knowing that just the deportation documents, which is the only thing the government relied on, aren't enough to meet that burden. But on the instruction part of it, the jury is told you have to find that he is an alien beyond a reasonable doubt. Correct. I don't know. What more is the judge supposed to say? If you're an average layperson, you're never going to know that, oh, here's this official-looking document. But what should the judge say? The judge should say, and what we're asking for here is basically an instruction where the judge says there is a difference between the burden of proof and criminal and immigration proceedings. Some of the documents that you've seen this morning came out of – or I'm sorry, some of the documents that you've seen at trial came out of an immigration proceeding. I'm just trying to make sure I'm focusing on what you're saying. Sure. So when the judge tells the jury you have to find that he's an alien beyond a reasonable doubt, which is the highest standard of proof we have in the law. Correct. That's not sufficient? No. Unless you tell the jury that the deportation documents aren't enough to meet that beyond a reasonable doubt, it's not a correct – You want the judge to weigh the evidence which is sufficient for a reasonable doubt? No, Your Honor. We just – Of course you could. Yeah. I don't honestly think that this is a terribly controversial proposition. There's actually a lot of courts, a lot of district courts in the Southern District that already give this instruction. But the instruction that says what? An instruction that says that deportation documents were issued under a clear and convincing standard, which is lower. That's all we're asking for. So essentially what – there's no issue – and the government has never disagreed that that's a correct statement of the law. There's no issue that that's a correct statement of the law. So all we're asking for here – Did the trial judge say anything during jury selection, talking about the difference between burdens of proof? The trial judge stated that he did, but in my review – and unfortunately it's not in the record – in my review, that just said the beyond the reasonable doubt standard. He didn't say that there's a difference between civil standard, deportation standard, or anything like that? For example, didn't he ask the jurors if they ever served on a jury before? I assume he did. We actually don't have that in the record, so I don't want to rely too much on it. But even assuming that he did, there's basically case law that we've cited saying that that's not enough. That instructions that were given during voir dire of the jury don't hold over. You have to re-instruct again for it to have any meaning. How about instructions at the beginning of the case? There were no instructions along those lines. As to burdens of proof? I'm sorry? As to burdens of proof? No. You want the jury then to be instructed as to what burden they have to apply, and then what burdens they don't apply, basically? No, Your Honor. I'm asking the court to instruct juries that if you want to rely on this evidence, this evidence was created under a burden that's lower than is necessary in a criminal proceeding. That's what I'm asking. And with the court's permission, I'll save the remainder of my time. Thank you, Ms. Hurtler. Thank you. May it please the court, Benjamin Hawley for the United States. In terms of the jury instructions, the question is not whether the instructions that were given are the best instruction or the most preferable instruction, but whether the instruction given was either misleading or inadequate to guide the jury's deliberation. And the answer here is that it was not. The model instruction correctly tells the jury everything you have to find has to be done beyond a reasonable doubt. No instruction implied either, none certainly stated and none implied, and the government did not argue that because this deportation order was entered, that is preclusive or conclusive proof that Mr. Reyes was deported or that he was an alien. Instead, the only standard the jury was to consider is the correct one, whether it was beyond a reasonable doubt. At trial, Mr. Reyes submitted a limiting instruction trying to talk about if these could be used as preclusive, if the removal orders could be used as preclusive evidence. The trial judge denied that because it was not a correct statement of law, but invited Mr. Reyes to submit a correct limiting instruction and said he'd be happy to read that. And that's at page 23 of the record, and at page 136, Mr. Reyes, through counsel, confirms that he decided not to submit such a limiting instruction that would have potentially avoided or solved this type of problem. Moreover, as I mentioned, the government did not rely solely on the documents. Not only did the evidence come out that Mr. Reyes had admitted he'd previously been returned to Mexico, but that was mentioned during the rebuttal closing, and that's at page 167 of the excerpts of record. In terms of the Rule 16 and the Brady situation, what was apparent that should have been turned over and was, was that the number on one of these documents essentially was a typo. It was the wrong number. As the district court found, it was not apparent that the status of that person had anything at all to do with Mr. Reyes. But there was an errant paper in somebody else's paper in Mr. Reyes's file? It wasn't exactly someone else's paper. Everything else on this is the notice about an administrative removal related to Mr. Reyes. It was just the wrong A number. But his name, birthday, all the other information was correct. The A number itself was the only incorrect information. Unless the Court has any other questions, I'm happy to submit. Now, did Agent Leyva, besides stating that Reyes had admitted he had been removed earlier, did he testify that Reyes had stated that he was a citizen of Mexico? He did, yes. And that he was born in Mexico, and at least his mother, I believe both parents were born in Mexico, was the information that Mr. Reyes gave to Agent Leyva, that Agent Leyva testified. Do you have a record cite to that type of evidence? It was during the direct examination of Agent Leyva, which is relatively early. He was the first witness, so it's relatively early in the record. It'll be around page 40, Your Honor. I have ER 41 to 43. Does that sound right? Yes. Yes. In fact, page 42 and then end of 43. So your position is that regardless of documents under Jackson, there's evidence in the record of an admission by the alien that he is an alien and that he had been removed? Correct. Thank you. Thank you, Mr. Hawley. Thank you, Your Honor. Mr. Hartzler, back to you. Can you tell me why that isn't sufficient? I just want to go back to the point, Your Honor. We're not arguing sufficiency of the evidence. All right. You're saying that that admission somehow should be conditioned to the jury by a special instruction saying, now, when Agent Leyva said that, what? You should keep in mind that he's only talking about a burden of proof different from the burden of proof that is in a criminal case? I want to clarify, first of all, the government brought up two different instructions, and it's true. We asked for two different instructions. One was a limiting instruction when the documents came in. We're not actually arguing that on appeal. The other is a general jury instruction that the judge gives to the jury before their deliberations, and that's where we're saying that in order for the jury to understand how much weight to assign to the deportation documents on the question of aliens. No, no, no. Forget the deportation documents.  Okay. Answer this question. As to Agent Leyva's statements as to the admissions made by your client, what's wrong with the instruction given as to reasonable doubt? A layperson jury member is never going to know that there's a difference between criminal and immigration. Leyva says, Reyes says he's a Mexican. Reyes says he was removed. Those are admissions of a party litigant. What's wrong with that as a basis for the judgment, the conviction? I think that what Your Honor is getting at is prejudice, is whether there is prejudice in terms of whether this jury instruction was given or not. And we can certainly talk about that. But I think that's a different issue than whether the jury instruction was included. Oh, you're saying that the jury may have relied on documents which were incorrectly instructed. Exactly. Thank you. Exactly. I apologize if I didn't make that clear. Okay. The other thing I just want to point out about the government characterizes the difference in the A number as a typo. It wasn't a typo. It wasn't, for instance, one number different. It was a completely different A number that belonged to a completely different person. And we're just asking the court to remand so we can figure out whether there was anything in that file that was meaningful enough that it could have affected the outcome. Thank you. Thank you, Your Honor. Good morning, Mr. Hawley. Thank you. The case just argued is submitted.
judges: Quist, Silverman, Bea